In the United States v. Santos Yes, good afternoon, your honors. My name is Lynn Westcott. It is allergy season, and so I will quote catch you for ten minutes. I'd like to reserve five for remit. Mr. Santos' case, I hope, is an anomaly in our system. We cannot ever forget or diminish the importance of the right to counsel or the waiver of that right. The Supreme Court tells us, and we all agree, that these Sixth Amendment right to counsel is inviolate, and when a defendant waives that right, all of us must ensure that the waiver is both knowing and intelligent. None of us should be satisfied with combing the record to find tidbits of commentary to try to support a conviction if the very foundation of that conviction was built on the shifting sand of a defective waiver of the Sixth Amendment right to counsel. In this case, the waiver of the Sixth Amendment is defective in the following ways. Well, let's parse the waiver of which you're speaking. In your brief, the blue brief, you mention only in terms of the argument section the waiver before the district court. You don't refer at all to the waiver of counsel, the And I take that to mean that you have absolutely no problem with that colloquy. Well, there's two prongs here, Your Honor. The first prong is Judge Fries, the magistrate judge, went right down the questions in the Peppers case. He went almost word for word, the Peppers inquiry. I agree with you. However, the Supreme Court teaches in Van Moltie v. Giles, G-I-L-I-E-S, that a waiver colloquy must be done at every stage of the proceeding. Now, the James case out of the Virgin Islands talked about arraignment, but these stages of cases, criminal cases, would be arraignment, then trial, then sentencing, if we're looking at stages of cases. So, my belief is that an excellent colloquy at one stage of the case does not cure the failure at another stage. But you haven't raised that in your brief. I think I did. You raised in your reply brief only the sentencing, the failure at sentencing to again do a forensic colloquy, correct? Yes, that was in my reply brief, and I believe in my initial blue brief, I do argue that his waiver of counsel at the trial court piece was... At the trial court only? Yes. But that's why my initial question was addressed to the full and complete unchallenged colloquy before the magistrate judge. But the magistrate judge did a terrific job, but I don't think that gets us where we need to go on this waiver of counsel thing. Does it change the kind of inquiry that the district judge needed to make? If we assume for the sake of discussion that we saw this the way you did and said, okay, in front of the district court judge, now pre-trial, that's a separate stage as opposed to in front of the magistrate judge, so under Von Moltke there, it would need to be another colloquy. But assuming that were the case, doesn't the fact that, as Judge Berry's pointed out, there was a letter-perfect peppers colloquy before the magistrate judge have some impact on how things would need to be handled in front of the district court judge? It's always helpful to have the letter-perfect peppers. However, there are different issues at arraignment and at trial. At arraignment, a defendant has to decide whether he's going to plead guilty or not guilty. At trial, the defendant has a whole panoply of things that he needs to worry about getting in evidence, does he need an expert, what about cross-examination. He had heard all of those things from the magistrate judge not three months before, right? I mean, he himself in the colloquy in front of the district judge says, in effect, we've done this already. I mean, even he seemed to be under the impression that what was taking place was a bit of a redundancy. So the question I'm trying to ask you is, if it's been given to him in detail, reasonably close in time, does that mean that it has to be gone through exactly the same way in front of the district judge? And if it does mean that, what happens to our frequent statement that there's no talismanic formula? Aren't we deep in formula land at that point? No, I don't think so because this court went to the trouble and peppers of laying out instructions and questions that have been adopted for the bench book. But that isn't Judge Jordan's question. You agree that it was letter-perfect at the magistrate judge level. The question is, must it be letter-perfect every other step along the way? When he comes in on some pretrial motion, you have to do it again. Before sentencing, you're saying he has to do it again. I mean, over and over again after a letter-perfect colloquy? I think this court said what it meant. It meant what it said. These are the questions. And if the Supreme Court says at every proceeding, this court should not be satisfied if the questions it set forth are not all asked. It's there in a book. Well, the government cited some cases, I think, which gave you the argument in your blue brief, in your gray brief, your reply brief, the argument you're making now. One of the cases they cited was one of our NPOs, Royal. But in Royal, there had been a complete waiver pretrial. And then he had counsel at trial. And then he wanted to go pro se for sentencing. And we, albeit in an NPO, said the first one was good enough. You don't have to go back at sentencing and do it over. And what about our case? I think that this court should set a standard with this case to instruct lawyers, the government, and the courts. Because, as you know, we've got several decisions, different stages. Okay, this. Okay, that. We need certainty. The lawyers need certainty. And so does the government. So I thought with Peppers, and put this in combination with Von Mulkey, that what this court was saying was, we gave you these questions. They have been adopted. I, as a lawyer, would look at that if I had been in Santos' court appointed counsel at trial, like I am on appeal. I would have said to someone, it's my duty and obligation as an officer of the defense counsel, I'm concerned about Mr. Santos' mental health. Mr. Santos' proffering. When the magistrate judge did the phoretic colloquy, there was no question as to the competence. Defense counsel conceded the competence of the client. I think Judge Rice did a good job. My argument goes two steps further, which is, if it takes 10 more minutes, or 15 more minutes, let's just do it. I think what you're saying now is that the magistrate judge does not have the statutory and constitutional authority to conduct a phoretic colloquy for purposes of a felony trial. That it's okay for what happens before the magistrate judge, but that at every stage thereafter, including when the defendant goes to trial, the district court has to do it over. Is that your argument? Well, you certainly said it better than I did. Well, it hasn't been raised in the briefs. It hasn't been raised in the briefs. It hasn't been briefed. The inference of my argument on Article III judges versus magistrates, my argument is a little more simple. This court said you have to do it. The Supreme Court says you've got to do it at every stage, and I think it ought to be enforced. It's one thing. What does at every stage mean? If the defendant has been represented and then he colloquy requirement will kick in. I agree. I don't know that that means that at every stage of a criminal prosecution, you must do it over and over again. Do it again. The Supreme Court quotes Johnson v. Zerbst, Z-E-R-B-S-T 304 U.S. 458, and jump site at 463, that says, and I quote, it is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry and take all the steps necessary to ensure the fullest protection of this constitutional right at every stage of the proceedings. That raises the question that I asked earlier, which is, what does it mean to have a thorough inquiry? If you have, within the last couple, three months, gone through in perfect detail every aspect in question, and you have before you, as a district court judge, a person who appears knowledgeable and indeed appears to protest going over things that he thinks he's gone over once before, does the thorough inquiry have to follow a precise script, or is it enough that the district judge satisfied him or herself that this person has got the capacity to remember what happened three months ago, does remember it, did pass on all those things, and is ready to move forward with that? What is it in the law that you're relying on that makes that not a thorough inquiry? This court's decision in Peppers who sent out the formula, you sent out the recipe. In essence, your position is, despite all our protestations to the contrary, there really is a talismanic formula, and if you step off of that, it's constitutionally defective. That's the argument, right? I don't think this court set out a talismanic formula because the paragraph after those questions said it was not, and if the court wanted to go beyond that and ask questions, it could. I took the list in Peppers as a list of minimum, the minimum, so it's a minimum formula, but if you don't hit the minimum formula, it's constitutionally defective. That's what I believe this court said. We will get you back on rebuttal. Thank you. Mr. Zausman? Good afternoon, your honors. May it please the court, Robert Zausman on behalf of the government. Your honor, the colloquies that took place here were more than adequate to fulfill the court's obligation to assure. Well, if Judge Tucker's was the only colloquy here, wouldn't you say that there was missing a couple of areas? No, I would not. There was one question. Looking solely at the Peppers? Just looking solely at Judge Tucker's colloquy, she left out one question regarding, from the Peppers inquiry, which was, was he aware of the defenses that were available to him? And could he call witnesses? And could he call witnesses? Now, the Supreme Court has said that part of the thorough inquiry has to be assuring oneself that the defendant understands the potential defenses. How can that be a, well, it's just one question? Well, for two reasons. First, Peppers made clear, in answer to your honor's question before, that the questions laid out in that case are not a required formula. That what is required is that the district court assure itself that the defendant is aware of the charges, aware of the potential penalties, aware of the process that will take place, and is making a knowing and informed decision, even though we all agree it's a really bad decision that's being made. The Peppers explicitly says that this is not a required formula that district judges have to follow. We have to step back on the questions, and these are important questions. Let me stop you because I'm sure you have something to say that I want to hear, but I'd like you to answer the question that I tried to the thorough inquiry, something that has to be covered is the defenses. That's the language of the Supreme Court. So, whether or not it's in the language Peppers put it or not, focusing on what Judge Berry said, take the magistrate judge out for a minute. If it's just Judge Tucker's discussion, isn't that defective under Supreme Court precedent because there's no discussion of potential defenses? But what is clear from the record, to answer your Honor's question, is that Mr. Santos was aware of the defenses he intended to present and of the witnesses. What's very... That's all... During the... I think you point to in your briefing comes after the colloquy, right? No. Your Honor, during the colloquy, first when he's asked, are you aware of the charges, and he says fully, and then he himself initiates and says, I need certain documents. I want to call certain witnesses. A district judge hearing this, if Peppers is the law, which it is, that there doesn't have to be a certain formula, but a district judge hearing this, I think is satisfied that this is a defendant who knows what he plans to do and what this case is about, and it does satisfy the necessary inquiry. So, from his statement, I have witnesses and documents I want in, and I know what I'm charged with, a district court could properly, without any comment or discussion at all, infer, you know, the range of defenses available to you? Well, definitely, because an important thing to consider here is that, as we know from the cases, the district judge is not supposed to give its own advice as to what the defenses are or as to how the defense should be handled. The district judge here has a more limited function, which is to assure that the defendant is acting knowingly and understands the case and what he plans to do in making the decision that he wants to represent himself. This is, at bottom, a limited inquiry. There's not supposed to be a discussion in what the district judge says, well, have you thought of this defense? Have you thought of that defense? Because that would go beyond the proper role of the neutral district court, and the cases are very clear about that. I would imagine, I mean, our initial questions have taken the magistrate judge out of the box, as if Judge Rice had not done a colloquy, and we're starting afresh with the district judge, and I think you can sense that there are areas that we're a little concerned about that the district judge didn't touch. When you say, let's put the magistrate judge back in. Absolutely. Well, yeah, but nobody's briefed this. Is the magistrate judge's colloquy good, you know, throughout the remainder of the proceedings? Yes, it is, and we did not brief it. That issue was not raised. Because it wasn't raised. In the briefs, but it's certainly true, and in fact, one thing I would add is that the law from the Supreme Court has moved in that direction regarding other areas. Now, this court certainly, it's the law of this circuit, I think it's in Welty, that there needs to be a coherent colloquy, that you should not look elsewhere at scattered parts of the record to see that the defendant knew what was going on. But the Supreme Court is moving in a very different direction. For example, with respect, I'm just thinking of this as I stand here, because Your Honor's raising the question. With respect to Rule 11 colloquies, the Supreme Court has made explicitly clear that the court, in deciding whether a guilty plea was knowing, is entitled to look at the entire record. And so, and I think that's a very appropriate standard for this as well. If you're right that the magistrate judge's unassailable colloquy will carry the day here, why did the prosecutor ask Judge Tucker to do it again? Because he was dotting every I and crossing every T. And because when Peppers was decided by this. Why did I know you'd say that? Well, when Peppers was decided by this court, we emphatically addressed, I personally addressed the prosecutors in our office to make sure that everybody was aware of this and assured that the colloquy was followed as extensively as possible. I think Mr. Zaleski did an outstanding job. He missed one exact question from the colloquy was not presented. But that's what was going on here. And that's the same reason. There's a broad topic. You keep calling it one question. But that's a broad topic. Let me quote you something from Jones. A decision from this court that binds us from 2006. James. Where there was a reversal based on the court saying that important issues escaped examination. This is from page 232 of that opinion. The district court in the very first thing said is the district court did not, for example, inquire whether Jones understood the possible defenses available to him, nor did it explain that it could not give him any assistance. The very first thing listed by this court in a precedential opinion as a gap that required reversal was a failure to inquire whether Jones understood the possible defenses available to him. And a little bit earlier, a page earlier on 231, the court said, even if the colloquy skips just one of the relevant factors, it fails to establish that the waiver is knowing, intelligent, and voluntary. Now, explain how in the face of that language from Jones, we could look at Judge Tucker's colloquy, which doesn't utter the word defenses, and say, that's okay. Jones notwithstanding. I think we have to look at Jones in its entirety, Your Honor. There were manifest errors in the abbreviated colloquy that took place in the Jones case, including the fact that the court in Jones never gave the essential statement to the defendant that self-representation was inadvisable, and numerous other omissions as well. So we do hear that line that says if one area is omitted, it's an inadequate colloquy. But that is not consistent, and arguably it's dictum, it's not consistent with the other case with Peppers and the explanation that there is no formulaic presentation that needs to be made.  Judge Rice explicitly asked the question. We've agreed that it was a letter-perfect colloquy. Perhaps this would be an appropriate problem to address if all we had was Judge Tucker's colloquy. But we have Judge Rice's, and then we have Judge Tucker's, in which defenses were discussed. It may have been initiated by the defendant, but he said exactly what he was planning to do. Well, stop. When you say he said exactly what he was planning to do, take me to that language, because I don't remember anybody discussing defenses. I remember what you said earlier, which is I have some witnesses, and I have some documents I want to get in, but I don't remember him talking about his defense. He didn't use the word defense. That is correct, Your Honor. But what he said, I believe at that hearing, he certainly said repeatedly throughout the proceedings, was his defense, and this is the defense he presented at trial, was that it wasn't him, that he was not there. And he was very, and pretty much the only way to defend this case, given that it involved the testimony of officers, that they had three transactions with him. So the important question here, Your Honor, I think is, if we credit peppers, that we're not going to require judges to go word for word through some formula, does this record satisfy us that this defendant understood the decision he was making, understood the charges, understood the penalties, understood how the trial was going to proceed, and what he was going to do? And that answer is unambiguous on this record. From beginning to end, Mr. Santos was emphatic about the fact that he wanted to represent himself, and no one was going to dissuade him. You're effectively saying that because the magistrate judge did it so right, that anything extra he got from the district court was gravy. Well, that's true, but I am also answering... Because the district court, Judge Tucker went into the guidelines. There were several questions about guidelines, and she colloquied Santos on that. So there were additional areas that she wasn't... Mr. Zales, I don't know why you're so hesitant to acknowledge the power of the magistrate court. I mean, Section 636, which outlines the authority of magistrate judges to act, says that they, a judge may designate a magistrate to hear and determine any pretrial matter with certain exceptions, and determining the voluntariness of a waiver right to counsel was not in one of those exceptions. Oh, absolutely. And I'm sorry if I sounded hesitant. I'm not hesitant in... I'm saying that the magistrate judge in this case got the job done. Judge Tucker iced the cake, if you want to put it colloquially. And then, of course, there are many other parts of the record you could look at to see... Accepting that being your position, in this case, we had, I think, about six months between the trial and the sentencing. Was there any reason that the judge at sentencing should have gone back through the waiver of counsel colloquially again? No, Your Honor. Judge, again, Mr. Santos was firm throughout that he was representing himself. That continued between the trial and sentencing as he himself continued to file papers, including what he called his own pre-sentence report. There was no suggestion whatsoever to the judge that anything had changed. An important thing I want to say... Is it his burden to suggest it, or does the case law tell us that the burden is on the district court to assure itself at every stage that the waiver is knowingly involuntary? You seem to be sliding over that pretty casually, Mr. Zosmer. What do we do with Von Moltke, which says, at every stage? Now, whether between the magistrate judge and the district court judge, you're at a different stage, maybe you could argue about, but at sentencing, is that clearly a different stage? Your Honor, I do need to address Von Moltke, which my friend, Ms. Westcott, brought up in her reply brief. No, the judge's obligation is to assure herself that the waiver is in effect with regard to every stage, but there is no precedent for the proposition that what that means is that the district judge must colloquy the defendant every time he walks in the courtroom. Von Moltke doesn't say that. No case, to my knowledge, has ever said that. Did the district court do anything? No, and I would submit that it was not required to. It was clear. The judge had heard the waiver from the defendant. Now, remember here that, as Ms. Westcott said, it's a fundamental right to be represented by counsel, but what Ferretta teaches is that it's also a fundamental right to represent yourself, and Santos had invoked that right over and over, that there was nothing to suggest to the district court that she needed to do it again. That's my question to you. Who's got the burden to assure themselves at that point? Is it his burden to come forward and say, tell me again, or is it burden on the district court to say, I'm at a different stage, I have to just make sure you still want to do this? At that time, there is no burden on anyone, unless there's an indication in the proceedings that would tell the judge that a new colloquy is required. She has complied with the law of this court and the Supreme Court in making the finding at the initial proceeding. Von Moltke, if I may address, Your Honor, does not hold what is being laid out here. What happened in Von Moltke was you had a guilty plea at which the defendant was not represented by counsel, and the Supreme Court had not addressed that situation before, so the issue before it was, is a guilty plea any different from a trial at which you'd have to assure that the defendant waived the right to counsel, and the Supreme Court said no. The right to counsel applies at every stage, and it was in that context that the exact quote of the Supreme Court was, quote, it is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to ensure the fullest protection of this constitutional right at every stage of the proceedings. A lot has happened in this area of the law since Von Moltke was decided 61 years ago, I think. That's right, Your Honor. And what has happened has never been a finding. As I said, a colloquy is required at every proceeding once the defendant has made clear his waiver of the right to counsel in the case, which is what happened here very emphatically several times. What does the language to make a thorough inquiry at every stage mean? How do you square? I'm just having trouble with the English language here, I guess. How do you square make a thorough inquiry at every stage with it was OK for the district judge to assume it was still all just the way that Mr. Santos had said? There is, Your Honor, an interesting grammatical question when you look at this sentence, because if the Supreme Court had moved that at every stage of the proceedings earlier and said to make a thorough inquiry at every stage of the proceedings, we'd have a clear statement favoring the defense. But what it said instead was make a thorough inquiry and take all steps necessary to ensure the fullest protection at every stage. That readily is read that there must be a colloquy and there must be a waiver that shows the defendant's intent to represent himself in the proceedings. Is that how we've read it? I don't know that this argument's ever been presented. There certainly, as I said, is no precedent that I'm aware of. And it would be an extraordinary burden on the district court to say that there must be a colloquy. How do you define every stage? Exactly. I don't know how you would define it. Would it need to be every day of trial? And it would not only be a burden on the district court, but I think it would be a burden on the public interest in having criminal trials handled not only expeditiously, but preferably handled once. Because what we'd have here would be a ready opportunity for a defendant to say he's representing himself and we'd be looking for the slightest error on every day and every required colloquy to force a new trial. That's never been the law. If you say it's never been the law, why does, as recently as the NPOs that have been argued in the briefing you presented, why is that apparently a discussion that has to take place at all? I mean, there's some discussion and there's some reasoning and there's some rationale given by the court for why it was okay to have handled it the way it was handled at sentencing. This was good enough or it didn't have to be repeated in toto. If this were really what you're saying, why is it even discussed? Why isn't it just a non-issue as in effect you're presenting it here? It's just not something that has to be done. How come it keeps coming up and being handled, albeit recently in NPOs? Well, it comes up differently, Your Honor, and I can't vouch for every case, but it comes up differently in the cases I'm thinking of and I believe Your Honor is, where it happens in different ways in different trials. For example, Royal is a case where he went back and forth from no counsel to counsel, back to counsel. So you need to discuss what do you need in that context. Stubbs was another case like that, where the request to represent pro se came up in the middle of the trial after the lawyer and so you have to look at whether the colloquy was adequate then. And Salerno, which is frequently cited, he had counsel at trial and then he wanted to go pro se for sentencing. Exactly, but in a bread and butter case like this, I just, Your Honor, do not know of any precedent where a defendant is emphatic throughout the initiation of the case that he's representing himself. He proceeds to do that throughout without exception and it's been held that there needs to be any more than the proper Pepper's inquiry at the outset. Unless the court has further questions, I'll rest on that. Thank you very much, Your Honor. Thank you. Rebuttal. Yes, a couple points on page 24 of my opening brief is there are bounces where it starts that I say the colloquy must be done by the trial court as opposed to the magistrate. And in fact, the Von Moltke decision supports that because Von Moltke says the constitutional right of an accused to be represented by counsel invokes of itself the protection of a trial court and that's the way my brief was fashioned, the trial court. That was even before we had such things as magistrate judges in that decision. Yes. Under the statute creating the magistrate judge system, it was clear that the statute says it can handle any pretrial matter. How do you get around that? Well, the magistrate couldn't handle a trial with a waiver. No, the statute says that the district court can direct the magistrate judge to handle any pretrial matter with limited exceptions. And this issue is not one of those exceptions. I think the question comes back to what Judge Jordan asked, which is at which stage of the proceeding should this be invoked? And my answer is what's wrong with doing it at these significant stages? So nobody has got any questions. Well, the question is not what's wrong with doing it again. The question is whether it's required constitutionally to do it again. I think, you know, Judge, it's like if you're standing in a stoplight and there aren't any cars coming, can you just cross the street? What we're doing is protecting people's rights. These are, I'd be the first one to tell you, and I know this court's got letters from Mr. Santos. He, I doubt that he understood what he was saying at all, but be that as it may, he said yes. So I'm stuck with that. But the people need to understand their rights. And it's my duty as an officer of the court, and I think the judge's duty also to make sure the people before them understand what the issues are. It's really not smart to be pro se. I mean, this is... Well, most people agree with that. And, you know, our decision in Peppers and the Supreme Court agrees with that. But if you draw a bright line like you're trying to do, that it has to be done at every stage, notwithstanding what other cases have said, where do you stop? Does every day that a defendant shows up in court, does the trial judge have to say, now, you know, Mr. Santos, are you sure? Are you sure you want to continue to represent it yourself? Well, you know, you didn't do very well yesterday cross-examining witness A. Are you sure you want to do this? Do you know that if you're in error here, you could face up to life imprisonment for the charges that are before you? I mean, does it happen every day? Does it happen every week? What's the rule? If you talk about stages of the proceeding, Judge Fischer, you did a non-presidential opinion in July, Lyons, L-Y-O-N-S, where a defendant was advised of the nature of the crimes of impossible punishment a couple months before these sentencing. But you went on to your panel, went on to explain that, yes, he was advised several months before, but the morning of the sentence, he had gone over the plea agreement and that sort of thing. So it seemed to me, I mean, I know your background within the state. I know you're concerned defendants get all the rights that are due to them. And I read this opinion as a careful analysis that the waiver issue, the reminding by a trial court and the government and council of people's constitutional rights, don't just stop before the magistrate or wherever they come into the system. I read this opinion as a recognition of this court yourself, Judge Slaughter and Judge Zureka, as recognizing that it is sentencing. Perhaps the defendant needed to be reminded because we can always continue a sentencing. I've been appointed before at sentencing where people found out their case really bad and they finally decided, well, maybe I need a lawyer. Of course, none of that happened here. Correct. He didn't even want to be colloquied again when they were on the trial date. He thought it was done. Yeah, there was no colloquy at the sentencing. In fact, he didn't even really understand that he was a career offender. He thought his guideline level was 12. Well, that's a very different question because the fact that he didn't represent himself well is not the issue. Oh, I agree. All right. Are there any other questions, Judge Fischer or Judge Jordan? I appreciate your time. Thank you. I certainly hope the allergy season passes quickly for you, Ms. Westbrook. I appreciate that. Thanks for your time. You've done a yeoman job under these circumstances. Thank you very much, counsel.